IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

JAMES NOYES,

    Plaintiff,

vs.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY, and
DAVID J. LONIGRO, individually,

    Defendants.
_____/

CASE NO.:   2012-CA-15323

DIVISION:   C

## AMENDED COMPLAINT

Plaintiff, JAMES NOYES, sues Defendants, UNIVERSAL UNDERWRITERS INSURANCE COMPANY, and DAVID J. LONIGRO, individually, and alleges:

1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorney's fees.

2.    Jurisdiction is proper pursuant to Section 48.193(1)(a) and (b)

3.    Plaintiff, JAMES NOYES ("NOYES"), at all times material hereto, was a resident of Hillsborough County, Florida.

4.    Defendant, UNIVERSAL UNDERWRITERS INSURANCE COMPANY ("UUIC"), is a foreign corporation organized under the laws of the State of Kansas, and authorized to do business in the State of Florida.

5.    Defendant DAVID J. LONIGRO ("LONIGRO") is an individual who currently resides in Hillsborough County, Florida.  LONIGRO is a member in good standing of the Florida Bar and currently practices law in Hillsborough County, Florida.

6.     NOYES, at all times material hereto, was employed by TAMPA AUTO SERVICE, LLC d/b/a TAMPA AUTO SERVICE ("Tampa Auto") as its service manager.

7.     On June 23, 2008, Roy Chattelle took his 2003 Ford Expedition (the "Expedition") to Tampa Auto for replacement of the right rear tire.  Instead of replacing the tire, TAMPA AUTO negligently repaired the tire.   Upon information and belief, Daniel Hitson was the Tampa Auto employee that performed the negligent repair.  He was supervised by NOYES.

8.     On September 27, 2008, Gwen Chattelle was driving the Expedition on I-75 in Bradenton, Florida when the right rear tire of the Expedition separated causing the vehicle to overturn (the "Crash") and severely injury Gwenn Chattelle and cause damage to her husband Roy Chattelle (the "Chattelle Claims").

9.     On the date of the Crash, Tampa Auto was insured against liability for its negligence and the negligence of its employees under a policy of insurance issued by UUIC bearing policy number 245530F and having bodily injury limits of three hundred thousand dollars ($300,000.00) and commercial umbrella limits of one million dollars ($1,000,000.00)(the "Policy").  The Policy was in full force and effect on the date of loss. A copy of the Policy is attached hereto as **Exhibit A**.

10.    As an employee of Tampa Auto, NOYES was an insured under the Policy on the date of the Crash with regard to the Chattelle Claims.

11.    NOYES and/or Tampa Auto properly reported the Crash to Defendant UUIC and complied with all the terms and conditions of the Policy.

12.    Pursuant to the terms of the policy, UUIC undertook the defense of the Chattelle Claims.

13. Given the nature of the Crash and the catastrophic losses suffered by the Chattelles, there was a sufficient risk of an adverse outcome from the claims that a reasonable person faced with the prospect of paying the entire claim would have settled the claims within the limits of available coverage, if it had been possible to do so.

14. On or about December 10, 2008, Roy Chattelle, individually and as the guardian of Gwen Chattelle (the "Chattelles") filed a lawsuit in the Thirteenth Judicial Circuit in and for Hillsborough County against Tampa Auto in the case styled <u>Roy Chattelle, Individually and as guardian of Gwen Chattelle v. Continental Tire North America, Inc. and Tampa Auto Service, LLC d/b/a Tampa Auto Service</u>, Case Number 08-29376-C (the "Underlying Action").

15. Defense of the Chattelle Claims was initially assigned by UUIC to staff counsel from the Law Offices of Michael J. Krakar. Upon information and belief, The Law Offices of Michael J. Krakar assigned the defense of the Chattelle claims to insurance staff counsel LONIGRO.

16. Upon information and belief, at all times material, all of the attorneys and staff at the Law Offices of Michael J. Krakar, including LONIGRO, are full-time salaried employees of an affiliate insurance company of Defendant UUIC.

17. Upon information and belief, at all times material, LONIGRO was an attorney practicing law in the State of Florida and operating in the course and scope of his employment with Defendant UUIC's affiliate insurance company and under the control of Defendant UUIC's affiliate insurance company.

18. LONIGRO appeared in the Underlying Action as counsel for Tampa Auto.

19. On October 5, 2009, LONIGRO wrote to counsel for the Chattelles offering the policy benefit of $1,300,000.00 to settle the Chattelle Claims. This was the first time any offer was made to settle the Chattelle Claims.

20. After the filing of the original Complaint, the Chattelles amended their complaint to add a claim for direct negligence against NOYES and Daniel Hitson.

21. The Chattelles obtained a jury verdict on their direct claims against NOYES and a Final Judgment was entered on February 22, 2012, against NOYES individually in favor of the Chattelles in the total amount of $4,646,129.02, plus interest. A copy of the Final Judgment is attached as **Exhibit B**.

22. All claims, defenses or issues raised in the lawsuit described above are finally resolved and are res judicata between the parties and their privies and all conditions precedent have been met or waived.

## COUNT I
## INSURANCE BAD FAITH AGAINST UUIC

23. Plaintiffs incorporate paragraphs 1 through 22 above as if fully set forth herein.

24. From the time Defendant UUIC learned of the Crash until October 5, 2009, Defendant UUIC made an intentional decision not to attempt to settle the Chattelle Claims against NOYES, even though Defendant UUIC (1) confirmed coverages under the Policy; (2) knew or should have known that Tampa Auto, including its employee NOYES, was liable for the losses suffered by the Chattelles; (3) knew that NOYES was an employee and therefore an insured under the Policy; and (4) knew or should have known that the losses were in excess of the available coverages under the Policy.

25.  The Chattelle Claims against NOYES could have and, under all of the circumstances, should have been settled within the limits of the available coverages had Defendant UUIC acted fairly and honestly and with due regard for the interests of NOYES.

26.  As a direct and proximate result of Defendant UUIC'S conduct and failures in handling the Chattelle Claims, they did not settle within the policy limits.

27.  Because of the relationship between NOYES and Defendant UUIC arising from the Policy, Defendant UUIC owed to NOYES a fiduciary duty with respect to the investigation, evaluation, negotiation and settlement of the claims presented against NOYES as a result of the Crash.  This fiduciary duty is akin to that between an attorney and his client and obligated Defendant UUIC to, among other things,

    a. Act fairly and honestly and with due regard for the interests of NOYES with respect to the claim made against him;

    b. Affirmatively initiate and follow through with settlement negotiations as soon as it knew or should have known that there was a possibility that NOYES was exposed to damages in excess of the policy limits;

    c. Conduct all settlement negotiations in good faith to the interests of NOYES wherever those interests might diverge from the interests of Defendant UUIC;

    d. Settle the Underlying Action against NOYES for any amount up to the policy limits if it could do so, when, under all the circumstances of the case, it could and should have done so had it acted fairly and honestly, and with due regard for the interests of its insured;

e. Exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the underlying claims against NOYES;

f. Adopt and implement standards for the proper investigation and handling of claims, commensurate with the needs of the types of claims reasonably anticipated that would be presented against its insured;

g. Properly train adjustors and claims personnel for the types of claims which would be undertaken by those employees;

h. Communicate with NOYES candidly and with complete integrity;

i. Fully, honestly, and promptly advise NOYES concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps he might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims upon him;

j. To provide competent assistance including, if necessary, the appointment of an independent attorney for the benefit of the insured in order to deliver independent, competent advice concerning the claim, and to assist the insured in meeting the conditions required to settle the claim, whether or not a lawsuit had been filed;

k. To perform all reasonably possible conditions necessary to settle the claim against the insured, that a reasonable person would if faced with exposure to the entire claim;

l. To avoid putting UUIC'S own interests ahead of NOYES, its insured;

    m. To provide an adequate, conflict-free defense for NOYES;

    n. To handle the entire claim in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as UUIC'S own policies.

28. Defendant UUIC breached its fiduciary duties of good faith in the handling of the claims made against NOYES by acting in bad faith by:

    a. Failing to act fairly and honestly and with due regard for the interest of NOYES with respect to the claims made against him;

    b. Failing to affirmatively initiate settlement negotiations even after evidence was available to indicate the possibility that NOYES was exposed to liability for damages in excess of its policy limits;

    c. Failing to conduct settlement negotiations in good faith with regard to the interests of NOYES wherever those interests might diverge from the interests of Defendant UUIC;

    d. Acting solely on the basis of Defendant UUIC'S own self-interests in defending rather than attempting to settle the claims of the Chattelles;

    e. Failing to settle the underlying claim by payment of an amount up to its policy limits when Defendant UUIC could and should have done so, had it acted fairly and honestly, and with due regard for NOYES'S interests;

    f. Failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the claims against NOYES;

g. Negligently and carelessly adjusting, investigating, evaluating and defending the claims against NOYES;

h. Failing to adopt and implement Defendant UUIC'S own standards for the proper investigation, evaluation and handling of the claims made against NOYES;

i. Failing to properly train adjustors and claims personnel for the types of claims which would be undertaken by those employees;

j. Failing to communicate with NOYES with complete candor and honesty;

k. Failing to fully, honestly and promptly advise NOYES of any settlement opportunities, the likelihood of a recovery in excess of the policy limits, and of the steps they might take to avoid same, and of any procedures which were available to lessen the financial impact of the underlying claims upon it;

l. Failing to advise NOYES that Defendant UUIC was intentionally choosing to defend rather than attempt to settle the claims of the Chattelles;

m. Failing to provide NOYES with competent assistance, in order to advise and assist him in understanding how attorney's fees could be assessed against him;

n. Failing to provide NOYES with an adequate defense;

o. Failing to follow the laws, statutes, governmental and industry standards and regulations and Defendant UUIC'S own policies that apply to the handling of liability claims by insurance companies.

29. As a direct and proximate result of this bad faith, the Chattelles' claims against NOYES did not settle and as a result NOYES suffered the entry of the Final Judgment described above.

30. UUIC has refused to pay anything in excess of the policy limits, plus interest thereon, to satisfy the Final Judgment against NOYES.

31. As a further direct and proximate result of Defendant UUIC'S bad faith conduct, NOYES has suffered consequential damages in addition to the entry of the Final Judgments described herein, including but not limited to, loss of reputation, financial loss and eventually, total failure of the business.

32. NOYES has retained the services of the undersigned attorneys and contracted with them for the payment of their attorney's fees to bring this action and obtain the payment of the excess damages caused by Defendant UUIC. By operation of law, including Florida Statute § 627.428, Defendant UUIC will be obligated to pay those fees upon the successful conclusion of NOYES'S claims.

WHEREFORE, Plaintiff, JAMES NOYES, demands judgment against Defendant, UNIVERSAL UNDERWRITERS INSURANCE COMPANY, including all unpaid and unsatisfied amounts of the Final Judgment and interest on those elements of damages upon which interest may be recovered, plus consequential damages, costs of this action and attorney's fees, and demands a trial by jury on all issues so triable.

## COUNT II
## PROFESSIONAL NEGLIGENCE AGAINST LONIGRO

33. Plaintiff incorporates paragraphs 1 through 22 above as if fully set forth herein.

34. Upon information and belief, an attorney client-relationship was formed between NOYES and Defendant LONIGRO.

35. In the alternative, NOYES was a third-party beneficiary of the attorney-client relationship between Tampa Auto and LONIGRO.

36. Defendant LONIGRO owed a duty of reasonable care to NOYES to protect his interests and provide competent legal services with a degree of knowledge and ordinary skill of which similarly situated Florida lawyers would exercise.

37. Defendant LONIGRO owed a reasonable duty to NOYES to provide him with representation that was free from conflicts of interest.

38. Defendant LONIGRO breached his duties to NOYES by failing to:

   a. Investigate the Chattelle Claims;

   b. Evaluate the Chattelle Claims;

   c. Advise NOYES of what would be required of him to settle the Chattelle Claims;

   d. Initiate settlement negotiations and attempt to settle the Chattelle Claims;

   e. Timely schedule mediation in an attempt to resolve the Chattelle Claims;

   f. Put the interest of NOYES ahead of the interest of his employer, an affiliate insurance company of Defendant, UUIC;

   g. Perceive, and failed to protect NOYES from, conflicts of interests;

   h. Prevent the interest of his employer, an affiliate of Defendant UUIC, from materially interfering with his independent professional judgment in considering alternatives or foreclosing courses of action that reasonably should have been pursued on behalf of NOYES.

    i.   Prevent the influence of his employer, an affiliate insurance company of Defendant UUIC, from overriding his ability to properly and adequately advise NOYES.

39. As a direct and proximate result of LONIGRO'S breach(es) of the reasonable duties he owed to NOYES, the Chattelle Claims did not settle within the amount of available insurance coverage and NOYES suffered the entry of the Final Judgment described above.

WHEREFORE, Plaintiff, JAMES NOYES, demands judgment against DAVID J. LONIGRO, individually, including all unpaid and unsatisfied amounts of the Final Judgment and interest on those elements of damages upon which interest may be recovered, plus consequential damages, costs of this action and attorney's fees, and demands a trial by jury on all issues so triable.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via email to **Douglas McIntosh** and **Tracy L. Kramer** dmmpleadings@mscesq.com, tkramer@mscesq.com, McIntosh Sawran & Cartaya, P.A., Post Office Box 7990, Fort Lauderdale, Florida 33338-7990, and **Daniel Rosenthal** and **David I. Spector**, david.spector@akerman.com, daniel.rosenthal@akerman.com, kim.roark@akerman.com, dolores.block@akerman.com, Akerman Senterfitt, 222

Lakeview Avenue, Suite 400, West Palm Beach, Florida 33401 on this <u>24th</u> day of June, 2013.

      ***/s/ Lisha Bowen***
LISHA BOWEN
Florida Bar No.: 0169374
LishaB@swopelaw.com
MARC MATTHEWS
Florida Bar No.: 0711098
MarcM@swopelaw.com
SWOPE, RODANTE P.A.
1234 East 5th Avenue
Tampa, Florida 33605
(813) 273-0017 – telephone
(813) 273-0017 – facsimile

**Service of Court Documents:**
Team5eservice@swopelaw.com
eservice@swopelaw.com